J-S19001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEE SMITH | |
| Appellant | No. 2509 EDA 2012 |

Appeal from the Judgment of Sentence Entered July 31, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos: CP-51-CR-0014959-2008 and CP-51-CR0014960-2008

BEFORE: STABILE, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 23, 2015**

Appellant, Lee Smith, appeals from the July 31, 2012 judgment of sentence imposing consecutive sentences of twenty to forty years of incarceration for two counts of attempted first-degree murder[1] and a consecutive sentence of ten to twenty years of incarceration for burglary.[2] We affirm.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On the evening of August 21, 2008, Complainant Sierra Richards [("Richards")] resided with her cousin, Lechole Brame,

_____

[1] 18 Pa.C.S.A. §§ 901 and 2502(a).

[2] 18 Pa.C.S.A. § 3502.

and Brame's mother at 3470 Joyce Street, Philadelphia, PA. Richards and her friend, Complainant Gary Montgomery, [("Montgomery")] were asleep in Richards' second floor bedroom and Appellant unlawfully entered the home and shot the complainants multiple times.

[…]

Richards testified that she was awakened when she felt the first gunshot to her stomach and that she then jumped up screaming. She stated Montgomery jumped up and asked what was wrong whereupon she looked into the hallway and that she observed Appellant continue to shot [sic] multiple times. Richards got up and, leaning on the wall for support, walked to her cousin's front bedroom. Brame asked Richards about the gunshots and Richards told her Appellant shot her. Richards then became unconscious. Brame called police. Brame's mother then observed that Montgomery had also been shot and he confirmed that to her. Richards explained that she and Appellant were in the process of ending a romantic relationship and that she was still seeing him on occasion.

Debra Thompson, another cousin of Richards, testified and described the relationship between Appellant and Richards. She stated that in April of 2008, while Appellant, Richards and Thompson were at a bar located 32nd [sic] and York Streets, Philadelphia, PA, she observed Appellant assault Complainant Richards. She testified:

> Well, I seen my little cousin balled up on the steps and screaming, 'Please don't hit he [sic], please don't hit me, please don't hit me again, please don't hit me, please don't hit me.' And I said, 'Lee, don't hit my cousin no more.' I said, 'Lee, don't hit my cousin no more. That's what I said. And he hit her again. And I jumped. I went to get my little cousin. And when I went and got my little cousin, he her [sic] again. That's when I jumped over her and jumped on him. You know it's true. I jumped on him and I got a scratch right here. My little cousin was laying in nothing but blood. She was saying, 'Oh my goodness, Debra, help me, help me, help me, help me.'

[Quoting N.T. Trial, 4/20/12, at 38].

Thompson further testified that she was with Appellant on the evening immediately prior to the shooting. She stated that she and Montgomery were outside when Appellant arrived and asked to speak with Montgomery. After the conversation she got into Appellant's car and observed that Appellant was enraged and that he stated to her that Richards had betrayed him. Montgomery testified that in that conversation he had with Appellant, Appellant assured Montgomery that Richards wanted to be with Montgomery, and that was alright with Appellant.

Trial Court Opinion, 1/18/13, at 2-3 (record citations omitted).

On April 17, 2012, the trial court conducted a hearing on Appellant's motion *in limine* to exclude evidence. The Commonwealth's notice of intent to present prior acts evidence, per Pa.R.E. 404(b) prompted Appellant's motion. The Commonwealth explained its intent to offer the testimony of the female victim, Richards, concerning Appellant's abuse of her during the spring and summer leading up to the shooting:

It would be her testimony that she starting in really May of 2008, leading to August of 2008, that summer, he had just routinely and consistently terrorized her emotionally and verbally, but seriously hurt her leading up to the time when he tried to take her life. He broke her jaw, literally, hi [sic] within weeks of this shooting. He punched her in the face repeatedly. Judge, in the time when he broke her jaw, that was April of 2008.

[…]

Prior to the shooting there was an argument that they had that [Appellant] told her that he was not going to be broken up with. This is not something that was going to happen to him, and he let her know that. Then within hours he come over and shot her repeatedly, along with the boyfriend who slept in bed.

N.T. Motion, 4/17/14, at 5-7. Appellant's counsel argued the prior bad acts evidence was irrelevant and more unfairly prejudicial than probative, but

counsel acknowledged he would present an identity defense. *Id.* at 8-10. The trial court held the prior acts evidence admissible. *Id.* at 11.

After a seven-day trial, the jury found Appellant guilty of the aforementioned counts of attempted first-degree murder and burglary, as well as two counts of aggravated assault and one count of possessing an instrument of crime.[3] The trial court imposed sentence on July 31, 2012. Appellant filed this timely appeal on August 15, 2012. This Court dismissed the appeal for failure to file a brief on April 10, 2013. One week later, on April 17, 2013, we granted Appellant's motion to reinstate the appeal and for appointment of new counsel. We remanded to the trial court to permit Appellant to file a supplemental Pa.R.A.P. 1925(b) statement and instructed the trial court to prepare a supplemental opinion. The trial court filed its supplemental opinion on September 12, 2014.

Appellant asserts two trial court errors. First, Appellant argues the trial court erred in admitting Richards' testimony about Appellant's prior assaults.[4] Second, Appellant argues the trial court erred in denying Appellant's motion for a mistrial after Debra Thompson ("Thompson") testified that Richards refused to go to the hospital after the prior assault,

_____

[3] 18 Pa.C.S.A. §§ 2702 and 907, respectively.

[4] Appellant's motion *in limine* pertained only to Richards' testimony. Appellant objected at trial to Thompson's prior acts testimony. In his brief, Appellant argues without specificity against the admission of all prior acts evidence.

claiming Appellant said he would kill her if she did so. The trial court sustained Appellant's objection to that portion of Thompson's testimony and ordered it stricken from the record, but the court declined to declare a mistrial. We will address these issues in turn.

Appellant's first argument implicates the trial court's evidentiary ruling. We therefore review the trial court's order for an abuse of discretion. **Commonwealth v. Miles**, 846 A.2d 132, 136 (Pa. Super. 2004), *appeal dismissed*, 871 A.2d 1248 (Pa. 2005). An abuse of discretion occurs where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." **Commonwealth v. Busanet**, 817 A.2d 1060, 1076 (Pa. 2002), *cert. denied*, 540 U.S. 869 (2003).

The Commonwealth introduced the prior acts evidence pursuant to Rule 404(b) of the Pennsylvania Rules of Evidence:

> (a) Character Evidence.
>
> (1) Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
> […]
>
> (b) Crimes, Wrongs or Other Acts.
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3) Notice in a Criminal Case. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(a), (b). "The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." *Commonwealth v. Ross*, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*).

Pursuant to Rule 404(b), the Commonwealth must establish a legitimate purpose for the prior acts evidence. One such legitimate purpose is to establish motive. In *Commonwealth v. Albrecht*, 511 A.2d 764 (Pa. 1986), *cert. denied*, 480 U.S. 951 (1987), our Supreme Court upheld the trial court's admission of the perpetrator's persistent abuse of his wife, whom he eventually murdered. The Court wrote: "the trial court ruling admitting evidence of Appellant's actions towards his wife for a period of seven months prior to the house burning was proper as it went to showing his ill-will and malice towards her, establishing homicidal motive, and culminated in murdering her." *Id.* at 772. Similarly the Supreme Court in *Commonwealth v. Drumheller*, 808 A.2d 893 (Pa. 2002), *cert. denied*,

- 6 -

539 U.S. 919 (2003), held that a thirty-four month history of abusive conduct "shows the chain of events that formed the history of the case, is part of the natural development of the case, and demonstrates [the defendant's] motive, malice, intent, and ill-will toward [the murder victim]." *Id.* at 905.

The instant record indicates Appellant abused Richards on several occasions in the months leading up to the attempted murder. The first incident occurred in January of 2008, when Appellant smacked Richards because he believed she took too long to return from the Walmart pharmacy. N.T. Trial, 4/20/12, at 83-84. In April of 2008, Appellant punched her in the face and broke her jaw. *Id.* at 84. She lied to the doctors about the cause of the injury so Appellant would not be "locked up." *Id.* at 86. Shortly after learning of Richards' relationship with the male victim, Montgomery, Appellant went into a "rage." *Id.* at 43-45. He committed the attempted murders shortly thereafter. Pursuant to *Albrecht* and *Drumheller*, the trial court did not abuse its discretion in finding the prior acts evidence admissible for a proper purpose under Rule 404(b). Specifically, the other acts evidence established the chain of events that

formed the history of this case,[5] and it established Appellant's motive for shooting Richards and Montgomery while they were in bed together.

Next, Appellant argues the trial court erred in finding the probative value of the other acts evidence outweighed the potential for unfair prejudice, in accord with Rule 404(b)(2). He argues this evidence invited the jury to infer Appellant's guilt based on his violent character, in violation of Rule 404(a). Appellant also argues the prior acts were too remote in time from the attempted homicide. Also, Appellant argues the Commonwealth had other competent evidence available and therefore did not need to introduce evidence of his prior acts. Appellant's Brief at 20-21.

Concerning the first of those arguments–inviting the jury to infer guilt from Appellant's violent character–we have already explained that the trial court did not abuse its discretion in admitting the evidence for the purpose of establishing Appellant's motive and establishing the history of the case.

Concerning the remoteness in time, the *Drumheller* Court rejected the defendant's assertion that PFA orders from 1996 and 1997 were too remote in time from a murder that occurred in April of 1999. *Drumheller*, 808 A.2d at 905. The Supreme Court noted it has never set an express time period within which admissible prior acts must occur. *Id.* Further, "it is

---

[5] Though not specifically identified in Rule 404(b), events comprising the complete story of the offense are admissible, as Rule 404(b) contains a non-exhaustive list of permissible uses of other acts evidence. Pa.R.E. 404, *Comment*; *Commonwealth v. Dillon*, 925 A.2d 131, 137 (Pa. 2007).

generally true that remoteness of the prior instances of hostility and strained relations affects the **weight** of the evidence and **not its admissibility**." *Id.* (quoting *Commonwealth v. Ulatoski*, 371 A.2d 186, 191 (1976)) (emphasis added in *Drumheller*). Likewise, the *Albrecht* Court found no error in the trial court's admission into evidence of a series of events that commenced seven months prior to the homicide. *Albrecht*, 511 A.2d at 772. Here, as in *Albrecht*, the earliest act of prior abuse occurred roughly seven months prior to the crime for which Appellant stood trial. We therefore reject Appellant's argument that the prior acts were too remote in time from the attempted homicide.

Finally, we consider Appellant's argument that the other acts evidence was unnecessary given other evidence available to the Commonwealth. For this argument Appellant cites *Commonwealth v. Mitchell*, 460 A.2d 1182 (Pa. Super. 1983). The *Mitchell* Court wrote:

> The court must balance on the one side the actual need for the evidence of other crimes in light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed by the accused, the strength or weakness of the other crimes evidence in supporting the issue, and on the other side, the degree to which the jury will probably be prejudiced by the evidence.

*Id.* at 1184. Regarding the Commonwealth's need for the evidence, we note that evidence of motive is always relevant and admissible. *Commonwealth v. Ward*, 605 A.2d 796, 797 (Pa. 1992). Furthermore, the other acts evidence helped the Commonwealth refute Appellant's argument that he was

not the perpetrator. For these reasons, we conclude the trial court did not abuse its discretion in finding that the Commonwealth had need for the other acts evidence, and that this evidence strongly supported the Commonwealth's case.

To preclude the possibility of unfair prejudice, the trial court instructed the jury as follows:

> You have heard evidence tending to show the defendant engaged in prior improper conduct with regard to Ms. Richards for which he is not on trial. This evidence is before you for a very limited purpose. That is, for the purpose of tending to show motive, course of conduct, common plan, scheme or design with regard to Ms. Richards. Also, to rebut any defense of mistaken identification is offered by the defense as to the shooter.
>
> This evidence must not be considered by you in any way other than for those purposes that I just stated. You must not regard this evidence as showing that the defendant is person [sic] of bad character or with criminal tendencies for which you might be inclined to infer guilt.
>
> If you find the defendant guilty, it must be because you're convinced by the evidence that he committed the crimes charged, and not because you believe he is wicked or has committed other improper conduct.

N.T. Trial, 4/24/12, at 59-60. A proper instruction on the purpose of other acts evidence minimizes any prejudicial effect. *Commonwealth v. Kinard*, 95 A.3d 279, 287 (Pa. Super. 2014). For all of the foregoing reasons, we conclude the trial court did not abuse its discretion in admitting other acts evidence pursuant to Rule 404(b).

Next, Appellant argues the trial court erred in denying his motion for a mistrial after Thompson testified that Richards refused to go to the hospital after Appellant broke her jaw because Richards was afraid Appellant would kill her. As set forth above, Thompson was an eyewitness to the April 2008 incident in which Appellant broke Richards' jaw. She gave the following account of her attempt to take Richards to the hospital afterward:

> Q. Did your cousin, [Richards], go to the hospital after that?
>
> A. No. I tried to take her to the hospital. He [sic] was so afraid of him. She tried to get out my boyfriend car. She tried to get out my boyfriend car. When she got out I was taking her to the hospital and she said, 'No, I just want my mom. Y'all don't understand. He will kill me. He will kill me.
>
> [Defense Counsel]: Objection. Motion to strike.
>
> THE COURT: Stricken. The jury will disregard.

N.T. Trial, 4/20/12, at 40-41. A sidebar immediately followed, during which Appellant's counsel moved for a mistrial. *Id.* at 41. The trial court denied the motion. *Id.* at 42.

We review an order denying a mistrial for abuse of discretion. *Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013). A mistrial is unnecessary where the trial court offers an adequate cautionary instruction. *Id.* At the outset, the trial court instructed the jury as follows:

> The admission of evidence at trial is governed by rule of law. It is my duty to rule on objections to the evidence made by the attorneys. If I overrule an objection to a question, that means the witness is required to answer. You, of course, are entitled to consider that

answer as evidence. If I sustain an objection, the witness is not permitted to answer, and you have nothing to consider because all you have heard is the question, and as I've said, questions are not evidence, only the answers are evidence.

At times you may hear the answer before I rule on the objection. For example, a witness may answer at the same time that the objection is made. If I sustain that kind of objection, the evidence is stricken from the record. **Whenever I order evidence stricken from the record, you must completely disregard that evidence in deciding the case.**

N.T. Trial, 4/19/12, at 19-20 (emphasis added).

Thus, the trial court properly instructed the jury on disregarding evidence. We presume the jury followed the trial court's proper instruction. ***Commonwealth v. Bedford***, 50 A.3d 707, 713 (Pa. Super. 2012), *appeal denied*, 57 A.3d 65 (Pa. 2012). In addition, the ***Bedford*** Court noted that where a substantial body of evidence supports a finding of guilt, the trial court does not abuse its discretion in declining to award a mistrial based on a single piece of evidence that has been stricken from the record. ***Id.*** Instantly, the trial court did not abuse its discretion in declining to declare a mistrial.

For all of the foregoing reasons, we conclude Appellant's assertions of error lack merit. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2015