J-S18034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON BRADLEY | |
| Appellant | No. 2064 EDA 2014 |

Appeal from the Judgment of Sentence February 26, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010497-2012

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                    **FILED AUGUST 12, 2015**

Appellant, Aaron Bradley, appeals from the February 26, 2014 judgment of sentence of life imprisonment without the possibility of parole, imposed following a conviction by a jury of first-degree murder, carrying a firearm in public in Philadelphia, and possessing instruments of a crime (PIC).[1]  After careful review, we affirm.

The trial court has set forth the relevant factual history in extensive detail in its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a); as such, we need not reiterate it in full herein.  **See** Trial Court Opinion, 10/31/14, at 2-24.  For purposes of this appeal, we briefly summarize the relevant facts as follows.

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 6108, and 907(a), respectively.

In the early morning hours of March 27, 2010, police responded to a call of shots fired and discovered Bruce Fox shot several times and hanging out of his vehicle. N.T., 2/19/14, at 79. Upon determining that Fox was unresponsive but breathing, the officers removed Fox from his vehicle and transported him in their police cruiser to a local trauma center. *Id.* Fox was pronounced dead at 2:34 a.m. *Id.* at 80.

At trial, the Commonwealth called Tanaya Nelson to testify. Nelson testified that she and Appellant were previously involved in a romantic relationship. *Id.* at 88. Nelson testified to suffering physical abuse at the hands of Appellant throughout their relationship. *Id.* at 90-97. Nelson also testified that an incident occurred that led to Appellant choking her, followed by her attacking him, and resulting in criminal charges against Nelson. *Id.* at 100-101.

In October 2009, Nelson began attending All State Career Trade School, where she met the victim, Bruce Fox. *Id.* at 106. The relationship between Nelson and Fox was friendly, but Nelson testified it was never romantic. *Id.* at 107. In January 2010, Fox took Nelson shopping and bought her some clothes. *Id.* at 109. When Appellant found out about Fox taking Nelson shopping, he became enraged and tore up the clothes Fox had purchased. *Id.* at 110.

On the Friday leading up to the incident, Nelson and Appellant went shopping at Wal-Mart. *Id.* at 128. Appellant purchased a dresser for Nelson

while at Wal-Mart, and then dropped Nelson off at her cousin's house, where Nelson lived. *Id.* 129-130. About an hour after arriving at her cousin's house, Nelson realized she had approximately ten missed calls from Appellant. *Id.* at 130. Nelson called Appellant back, and he began to question where she was and who she was with. *Id.* Appellant then went to the house and took Nelson's phone and started to go through it, wherein he saw a text from Fox which made him angry. *Id.* at 132. Appellant then left and took Nelson's cell phone with him. *Id.* Nelson repeatedly called Appellant from her cousin's phone and her cousin's boyfriend's phone. *Id.* Appellant returned Nelson's phone the following morning on March 27, 2010 by leaving it in Appellant's cousin's mailbox. *Id.* at 135.

Upon recovering her phone, Nelson received a phone call from Philadelphia detectives asking to come and speak with her. *Id.* at 139. Nelson realized that her call and text message logs had been deleted, and she had not deleted them prior to Appellant taking her phone. *Id.* at 141.

The trial court accurately summarized the testimony regarding Nelson's phone log as follows.

> Nelson testified that [Appellant] had two phone numbers which she used to contact him. Nelson then read from a call log the calls [Appellant] made to her phone on the night of March 26, 2010. Nelson testified that, according to the call log, [Appellant] called her ten times between 11:51 p.m. and 12:06 a.m.[] Nelson then read from the log that she called [Appellant] at 12:07 a.m. and they talked for 497 seconds. Nelson testified that she believed this was the conversation when [Appellant] accused her of

being with another man because she did not pick up her phone. Nelson then read the next call from [Appellant] to her phone was at 12:23 a.m. but she did not answer. Nelson further read the next phone call made by her phone was at 12:52 a.m. to Fox. Nelson stated that the call log then showed three phone calls between 12:53 a.m. to 12:55 a.m. from her cousin's phone to her cell phone. Nelson testified that these were the calls she had made to [Appellant] shortly after he had left with her phone. Nelson then read from the call log that there were phone calls made at 6:46 a.m., 8:21 a.m., 10:05 a.m., and 10:36 a.m. from her cousin's boyfriend's phone to [Appellant]'s phone, which Nelson testified was when she called [Appellant] the next morning to have him return her phone. Nelson testified that she retrieved her phone from the mailbox shortly after the last call.

Nelson then read from text messages that had been sent between her phone and Fox's phone between 1:07 a.m. to 2:42 a.m. on March 27, 2010. Nelson stated that the first message was sent from her phone to Fox at 1:07. It read, "Can you come get me?" Nelson testified that the next message was sent at 1:29 from her phone to Fox, and read "I want to see you tonight." Nelson testified Fox then responded at 1:29, "Where you at? F.O.E.[]" Nelson stated the next message was sent from her phone to Fox at 1:32 and read, "70th and Dicks." Nelson testified Fox responded at 1:34, "You know who you talking to?" Nelson testified that the next message was sent at 1:35 from her phone to Fox and it read, "Yeah. Why you say that?" Nelson stated Fox responded at 1:41, "I'm about to slide through there. F.O.E.[]" Nelson testified that the next message was sent from her phone to Fox at 1:45 and read, "Call when you get there." Fox then replied at 1:53, "On my way." Nelson testified that Fox then called her phone at 2:21 a.m.[] Nelson further testified the next text message was sent at 2:21 from her phone to Fox and read "You here?" Fox then responded at 2:21, "Yeah. F.O.E.[]" Nelson stated the next message was sent from her phone to

- 4 -

Fox at 2:24 and read "Here I come." Nelson testified the next message was sent at 2:26 from her phone to Fox and read "What kind of car you in?" Fox responded at 2:27, "I'm on the corner of 70th Street. F.O.E.[]" Nelson stated the next message was then sent at 2:31 from Fox and read, "Come on now." A response was then sent from her phone at 2:34 and read, "Okay." Nelson testified the next message was sent from Fox to her phone at 2:36 and read, "Where you at?" A response was then sent from her phone at 2:36 and read "Where you at?" Nelson testified that Fox responded at 2:37, "On the corner." Nelson stated the next message was sent from her phone to Fox at 2:39 and read "Where?" Fox then responded at 2:39, "70th and Dicks." Nelson testified the next message was sent from her phone to Fox at 2:41 and read, "Oh, I see you." Fox then responded at 2:42, "Come on." Nelson testified that she did not send or receive any of these texts. Nelson further testified that when her phone was returned to her, all these texts had been deleted from her phone. Nelson stated she had no animosity towards Fox and he was "a sweet guy."

Trial Court Opinion, 10/31/14, at 9-10 (internal citations omitted).

The trial court set forth the procedural history of this case as follows.

On July 9, 2012, [Appellant] was arrested and charged with first-degree murder, PIC, and carrying a firearm in public. From February 19 to February 25, 2014, a trial was held in the presence of a jury. On February 26, 2014, [Appellant] was found guilty of all charges and [the trial c]ourt sentenced him to the mandatory sentence of life without parole on the first-degree murder charge and 2 ½ to 5 years on each gun charge, to run concurrently with the life sentence.

On February 26, 2014, [Appellant] filed a motion to vacate his sentence through counsel, which was denied by operation of law on June 26, 2014.

*Id.* at 2.  On July 16, 2014, Appellant filed a timely notice of appeal.[2]

On appeal, Appellant raises the following issues for our review.

> A.  Did the trial court err by permitting the Commonwealth to introduce evidence indicating that Appellant optained [sic] a Florida gun license two months after the crimes herein occurred because such evidence was irrelevant and highly prejudicial?
>
> B.  Did the trial court commit an abuse of discretion by overruling an objection to a comment made by the prosecutor during her opening speech wherein she attempted to invoke the sympathy of the jury by arguing that the victim's child was left fatherless?
>
> C.  Did the trial court err by denying a motion for a mistrial proffered after a life-in-being witness gave testimony that was irrelevant, emotional, and highly prejudicial?
>
> D.  Did the trial court commit an error of law by overruling objections to comments made by the prosecutor that advised the jury that defense counsel was attempting to distract the jury and had done something wrong or underhanded by calling Appellant's daughter as a witness?

Appellant's Brief at 3.[3]

In his first issue, Appellant argues the trial court "committed an abuse of discretion by permitting the Commonwealth to introduce evidence that [A]ppellant obtained a gun license in Florida almost two months after the

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

[3] For purposes of our review, we elect to address Appellant's issues in a slightly different order.

crime herein was committed and that when he was arrested … he had the identification card in his possession[.]" ***Id.*** at 14. Appellant argues the evidence was prejudicial because "it permitted the jury to infer that [A]ppellant may have also possessed a weapon prior to obtaining the license." ***Id.*** at 16. Further, Appellant argues that "prejudice occurred because the license was obtained almost two months after the killing and no evidence was introduced that in any way connected the issuance of the license to the murder." ***Id.***

We begin by noting our well-settled standard of review regarding the admissibility of evidence in a criminal trial.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Fischere***, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 83 A.3d 167 (Pa. 2013).

> Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

> Pa.R.E. 401. Building upon this definition, Rule 402 provides, in full, as follows: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Thus, while the general rule of the admissibility of relevant evidence is subject to various exceptions, the rule that irrelevant evidence is not admissible is categorical. Accordingly, [t]he threshold inquiry with admission of evidence is whether the evidence is relevant.

*Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008) (some internal quotation marks and citations omitted).

At trial, the Commonwealth moved to enter, as Exhibit C-38, Appellant's Florida gun license to carry a concealed weapon, which he obtained after the murder that is the subject of this appeal. N.T., 2/21/14, at 133-134. Defense counsel objected to the admission of the exhibit, and requested a sidebar. *Id.* at 134. Specifically, defense counsel objected as follows.

> My objection, first, your Honor, with respect to C-38 being the concealed weapon or concealed weapon or firearm license, state of Florida, the relevance of that is somewhat tenuous since the date of issue is after the homicide and the time my client is picked up is almost – well, about 20 months after or 21 months after the homicide. So there's a large gap in time from a temporal perspective.
>
> There's also the issue that this document we know definitely was not in existence on the date of the murder so I don't know how it's relevant. So I don't think that comes in at all with all due respect if we know it wasn't in existence at the time of the murder and he possessed it 21 or 22 months after the murder.

*Id.* at 136. The trial court overruled defense counsel's objection and the Florida gun license was admitted into evidence. Appellant correctly notes that although he applied for the permit prior to the murder, that evidence was not admitted at trial. Appellant's Brief at 16. Appellant further argues the evidence was prejudicial "because it permitted the jury to infer that [A]ppellant may have also possessed a weapon prior to obtaining the license." *Id.*

Assuming, *arguendo*, that the admission of Appellant's Florida gun license was error, we nevertheless conclude that said error was harmless.

> An error "can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978). "When the record reveals that an error did not prejudice the defendant, or that the prejudice was so minimal that, beyond a reasonable doubt, it did not influence the jury, [the Pennsylvania Supreme Court has] held the error harmless." *Id.* at 164–165 (footnotes omitted). "Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt." *Id.* at 166.

*Commonwealth v. Barnett*, --- A.3d ---, 2015 WL 4550107, *4 (Pa. Super. 2015).

Accordingly, the question for review is whether the evidence of the Florida gun license overwhelmingly established Appellant's guilt. We agree with the trial court that said evidence did not influence the verdict.

> [T]here was overwhelming evidence presented at trial from forensic experts Stark, Tankelewicz, and Shute that [Appellant] was present at the crime scene when Fox was murdered and lured Fox to the crime scene by using Nelson's phone. Moreover, according to Nelson's testimony, it was January, 2010, that she and [Appellant] had a confrontation after [Appellant] saw another man driving her home from work. Nelson stated that when [Appellant] realized another man had driven her home, he became enraged and tried to stuff the cigarette she was smoking into her mouth. Nelson testified that [Appellant] was carrying a gun on his hip during this incident. Nelson further testified that this was not the first time she had seen [Appellant] carrying a gun. Furthermore, Nelson stated that [Appellant] previously had held the gun to her head and threatened to kill her. Nelson testified that the gun was a semiautomatic pistol, but she did not know what caliber it was. Nelson further stated that, even though she was scared when [Appellant] put the gun to her head, she never reported any of the incidents to the police. Thus, the jury had ample evidence upon which to base their verdict aside from the fact that [Appellant] was issued a Florida license to carry a concealed firearm[.]

Trial Court Opinion, 10/31/14, at 26-27. Based on the foregoing, we conclude the admission of evidence that Appellant obtained a Florida license to carry a concealed firearm approximately two months after the murder of Fox was harmless error. ***Barnett***, ***supra***. As such, Appellant's first issue fails.

We next address Appellant's third issue which also implicates the admission of evidence. In his third issue, Appellant asserts that he is entitled to a new trial because the trial court erred in overruling "a motion for a mistrial proffered after the prosecutor elicited from the victim's mother

that the victim was all about family, he always helped family members, and had the names of his family tattooed on his body."  Appellant's Brief at 23-24.

Our standard of review is as follows.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is abused.  A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.  A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013) (citation omitted).

Appellant avers that "[t]he law is clear that the Commonwealth is prohibited from introducing evidence tending to induce sympathy for the victim or the victim's family."  Appellant's Brief at 24.  Relying on *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978), Appellant asserts "otherwise irrelevant evidence garnering sympathy for the victim or his family [is] clearly inadmissible[]."  Appellant's Brief at 24.

Upon review, we conclude Appellant mischaracterizes our Supreme Court's holding in *Story*.  In 1974, Story was accused of murdering a

Pittsburgh police officer, for which he was convicted of first-degree murder. ***Story***, ***supra*** at 158. Over objection at trial, the Commonwealth admitted into evidence testimony "that the victim left a widow and a handicapped daughter, and that his widow was forced to work after her husband's death[.]" ***Id.*** Further, two photographs of the officer and his daughter on vacation were admitted into evidence. ***Id.*** Story argued, and our Supreme Court agreed, that the admission of "this evidence injected extraneous considerations into the case and prejudiced appellant by creating sympathy for the victim and his family." ***Id.*** at 159. In holding that the evidence was admitted in error, the ***Story*** Court cautioned as follows.

> **Ordinarily, in determining whether evidence is admissible at trial, the trial court must balance the probativeness of the evidence against its prejudicial impact.** In this case, however, the evidence in question was totally irrelevant to the determination of appellant's guilt or innocence. It was therefore unnecessary for the trial court to determine whether the probativeness outweighed the prejudice.

***Id.*** at 160 (citations omitted; emphasis added).

The instant matter is distinguishable, as the evidence Appellant asserts should have been inadmissible, was not irrelevant. At trial, the victim's mother, Antoinette Smith, testified that she and the victim resided together, and that on the night he was murdered he borrowed her car when he left their house. N.T., 2/21/14, at 173. Smith testified that she last spoke to her son around 1:30 a.m. when she called him and asked him to come home

because his son, whom she was watching, was not sleeping well.  *Id.*  She then testified as follows.

> [The Commonwealth]:
>
> Q.  Did you identify your son's body at the morgue?
>
> [Smith]:
>
> A.  Yes, I did.
>
> Q.  F.O.E., your son's signature on his cell phone that he put on some of his text messages, do you know what that means?
>
> A.  F.O.E. means family over everything.  [Appellant] was about family most definitely.  Every event, any event [Appellant] was there on the spot helping and that night [Appellant]'s life was taken doing what he thought - - what he did best, helping someone.
>
> Q.  And, in fact, does he have F.O.E. tattooed on his body?
>
> A.  Yes.  He had a body scroll of everyone's name. That was a project that he was doing to honor his family.

*Id.* at 175.

Defense counsel did not object to the testimony at the time it was offered, but after Smith stepped down and the jury was excused, defense counsel made a motion for a mistrial.  The trial court denied his motion for the following reasons.

> I mean, this witness was asked the question that all of us were wondering and that is what did F.O.E. mean behind all the texts.  I wanted to know what F.O.E. meant.  I didn't know she was going to give that explanation.  But she answered the question.

> That is a fact that the jury might want to know what did F.O.E. mean. She told us. F.O.E. means family over everything. So it wasn't anything improper about that.
>
> Now, for her to go on and say that he was that kind of person, always doing things for people, I don't think that was improper either. So I'm going to deny your motion.

*Id.* at 180.

Upon review, we agree with the trial court's conclusion. Through Nelson's testimony presented at trial, F.O.E. was read into the record in relation to several of Fox's text messages. Smith as a witness was testifying to her knowledge of the meaning of F.O.E. Further, her statement that her son borrowed her car and went out to help Nelson on the night he was murdered is consistent with the evidence admitted through Nelson's own testimony and the cell phone records. Therefore, we conclude that the probative value of Smith's testimony was outweighed by any prejudice that may have resulted in sympathy for the victim. *See also Commonwealth v. Yarris*, 549 A.2d 513, 525 (Pa. 1988) (holding "*Story* prohibited the use of pictures of the living victim *and his family* which served no purpose other than to create sympathy for the family[]"). Accordingly, Appellant's issue must fail.

Finally, we address Appellant's second and forth issues concerning objections to comments made by the prosecutor in her opening and closing statements.

[A] claim of prosecutorial misconduct either sounds in a specific constitutional provision that the prosecutor allegedly violated, or, more commonly, implicates Fourteenth Amendment due process. ***Commonwealth v. Tedford***, 960 A.2d 1, 28–29 ([Pa.] 2008). The touchstone of due process is the fairness of the trial, rather than the culpability of the prosecutor; consequently, it is the trial court's ruling on the defendant's objection to the prosecutor's allegedly improper statement that is reviewable on appeal, and not the prosecutor's underlying misconduct. ***Id.*** at 29. Nevertheless, the prosecutor's statements must be scrutinized in order to address the propriety of the trial court's ruling. It is well-established that "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." ***Commonwealth v. Bryant***, ––– Pa. ––––, 67 A.3d 716, 727 ([Pa.] 2013) (citing ***Commonwealth v. Hutchinson***, 25 A.3d 277, 307 ([Pa.] 2011)). A prosecutor's remarks in **opening statements** must be fair deductions from the evidence the Commonwealth intends to offer, which the prosecutor believes, in good faith, will be available and admissible at trial. ***Commonwealth v. Fultz***, 386 A.2d 513, 516 ([Pa.] 1978). In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence. ***Commonwealth v. Daniels***, 644 A.2d 1175[, [1184] ([Pa.] 1994).

***Commonwealth v. Arrington***, 86 A.3d 831, 853 (Pa. 2014) (parallel citations omitted), *cert. denied*, ***Arrington v. Pennsylvania***, 135 S. Ct. 479 (2014) (emphasis added). Further, "we review the trial court's determination that a new trial was warranted due to prosecutorial

- 15 -

misconduct for abuse of discretion." ***Commonwealth v. Culver***, 51 A.3d 866, 871 (Pa. Super. 2012) (citation omitted).

Appellant argues in his second issue the trial court committed an abuse of discretion by "overruling an objection to a comment made by the prosecutor during her opening speech to the jury wherein she argued that the killing of the victim had devastating consequences for the victim's son." Appellant's Brief at 18. Appellant asserts said comment should have been inadmissible because "comments attempting to evoke sympathy for the victim or others are irrelevant and not permissible." ***Id.***

A review of the record indicates that in her opening statement, the prosecutor said "[s]omething as trivial as jealousy over a woman has devastating consequences. Bruce Fox's child has to grow up … without his father." N.T., 2/19/14, at 36. Appellant objected to the Commonwealth's statement, and the trial court subsequently overruled Appellant's objection. ***Id.*** at 37.

Contrary to Appellant's assertion, we agree with the trial court that the comment made by the prosecutor during the opening statement was fleeting. Trial Court Opinion, 10/31/14, at 28 ("[w]hile references intended to engender sympathy for the family of the victim are improper, prejudice will not result from them if they are fleeting and do not substantially affect the outcome of the trial[,]" *citing* ***Commonwealth v. May***, 898 A.3d 559, 567 (Pa. 2006)). Further, we note that Appellant again asserts that ***Story*** is

controlling. Appellant's Brief at 21-22. However, as previously discussed, *Story* is legally distinguishable from the instant matter, as it involved the testimony of the victim's widow solely regarding the impact the loss of the victim had on their family and child. The instant matter did not involve a witness's testimony regarding the impact on the victim's family, but rather was a comment made by the prosecutor in her opening statement. As such, *Story* is inapplicable.

Further, as the trial court noted, it instructed the jury prior to opening statements to "not permit any sympathy you feel for any of the witnesses or for the victim or for the defendant to divert you from your sworn duty to consider all of the evidence fairly and impartially when deliberating upon your verdict." Trial Court Opinion, 10/31/14, at 29, *citing* N.T., 2/19/14, at 29. We presume the jury followed the trial court's instructions. *Fortenbaugh*, *supra* at 193. Accordingly, the trial court did not err in overruling defense counsel's objection.

Similarly, in his fourth issue, Appellant argues the trial court erred in overruling his objections to comments made by the prosecutor in her closing argument where she "improperly argued to the jury that it had to 'look out' for defense 'tactics' and for the jury to keep its eye on the ball." Appellant's Brief at 27. Appellant also argues "[i]f this weren't bad enough, the prosecutor criticized and denigrated defense strategy for calling [A]ppellant's daughter as a defense witness." *Id.* at 27-28.

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Caldwell*, --- A.3d ---, 2015 WL 3444594 (Pa. Super. 2015) (*en banc*), *citing* *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009).

Instantly, the comments made by the prosecutor during her closing argument were in direct response to defense counsel's closing argument.

First, the prosecutor's statement that the jury should "keep [their] eye on the ball' and "look out for the defense tactics in this case" because "the defense wants to distract [them] from the very strong evidence" was a proper response to arguments made by defense counsel during his closing statement. In his closing statement, defense counsel repeatedly attacked Nelson's character and accused her of a variety of misdeeds. It was in response to these statements that the prosecutor rightly characterized the defense's tactics as an attempt to distract the jury from the otherwise overwhelming evidence of [Appellant]'s guilt. As the prosecutor correctly noted in making this point, whether or not Nelson was a likeable witness simply did not have any bearing on whether [Appellant] killed Fox, especially since there was ample evidence aside from her testimony that implicated [Appellant]. Defense counsel also objected to the prosecutor characterizing the calling of [Appellant]'s daughter to testify as an act of desperation. … [N]either [this comment or the

- 18 -

previous] comment made by the prosecutor during her closing statement prevented the jury from weighing the evidence objectively and arriving at a true verdict. In this case, the evidence was such that the jury could arrive at a guilty verdict regardless of their opinion as to Nelson's character or [Appellant]'s daughter's testimony. Thus, there was no showing that [Appellant] was in any way prejudiced by either of the prosecutor's comments in her closing statement[.]

Trial Court Opinion, 10/31/14, at 33-35.

Therefore, Appellant's second and fourth issues concerning prosecutorial misconduct based on statements made in both her opening and closing arguments are without merit. Accordingly, Appellant is not entitled to relief on either issue.

Based on the foregoing, we conclude each of Appellant's issues is devoid of merit. Accordingly, we affirm the trial court's February 26, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2015