J-S91034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :           PENNSYLVANIA
  :
            Appellee   :
      v.   :
  :
ANGELA MARIE JONES   :
  :
            Appellant   :   No. 526 MDA 2016

Appeal from the Judgment of Sentence February 18, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0003758-2014

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY STEVENS, P.J.E.:           **FILED JANUARY 27, 2017**

Angela Marie Jones ("Appellant") appeals from the judgment of sentence entered by the Court of Common Pleas of Lancaster County after a jury convicted Appellant of three counts of Endangering the Welfare of Children (18 Pa.C.S. § 4304(a)(1)).[1]  Appellant claims the trial court abused its discretion in various evidentiary matters and in imposing an excessive sentence.  After careful review, we affirm.

The trial court aptly summarized the factual history of this case as follows:

> In July 2014, [Appellant] lived with her fiancé, [V.D.] and her
> three children [E, H, and D] … in Ephrata, Lancaster County.  At

---

[1] We refer to Appellant and her family members with their initials as this case involves the care of minor children.

---

*Former Justice specially assigned to the Superior Court.

the time, E was six, H was three, and D was one. [Appellant's] apartment building had three levels, with [Appellant's] apartment occupying the top two floors. Her brother, [A.J.], lived in the same building with his fiancé [B.H.] in an apartment directly underneath his sister's.

On the evening of July 11, 2014, [Appellant] was at home with her children while her fiancé was at work. She had planned to attend an AA meeting from 7:00 p.m. until 8:00 p.m. at a church located very close to her home. [FN2] [Appellant] claimed she had arranged for a babysitter, [A.D.] but that [A.D.] was running late. At some point that evening, [Appellant] decided to go to the meeting, leaving her children unattended. She testified that she left for the meeting at 7:45 p.m. and that, by the time she left, her children had been asleep for approximately ten minutes. She added that she returned from the meeting at approximately 8:30 p.m. and that the babysitter arrived shortly thereafter.

> [FN2:] The church building was down an alley from the home. The two structures were approximately one hundred feet apart.

[A.J.] testified that, at approximately 7:30 P.M. on July 11, 2014, he was sitting on a couch in his apartment watching television when he noticed movement on his front porch. About fifteen minutes later, he noticed movement on his front porch again and decided to investigate. When he opened the blinds and looked out the window, he noticed his nephew [H.] on the front porch crying for his mother. After consulting with his fiancé, [A.J.] brought [H.] into his apartment and went upstairs to [Appellant's] apartment to check on her other two children. He found [Appellant's] other two children unattended on the upper level of her apartment, and indicated that it was very warm in the room and that the youngest child, [D.], was sweating. There was one operating window air conditioning unit in the apartment, located in [Appellant's] bedroom, but the door to that room was almost entirely closed.

During this time, [A.J.'s fiancé, B.H.], called the police and Sergeant Philip Snavely of the Ephrata Borough police responded. The call was made at 8:05 P.M. and Sergeant Snavely responded at 8:07 P.M. Sergeant Snavely initially spoke with [B.H.] in her apartment and then proceeded up to

- 2 -

[Appellant's] apartment. There, he observed [Appellant's] two other children on the third floor of the apartment. He indicated that the bedroom appeared to be a converted attic and was very hot. He also observed a knife on the kitchen counter, utensils in the kitchen sink, and an unlocked second-story exterior door, which led to a second-floor balcony with steep stairs on the side leading to the ground level of the building. Sergeant Snavely then notified the Lancaster County Children and Youth Agency that he was leaving all three children with [A.J.] and [B.H.] He cleared the scene at 8:30 P.M. after advising [A.J.] and his fiancé to call him immediately once [Appellant] returned and to not allow [Appellant] to take back her children until they had done so. They complied.

[B.H.] stated that, at approximately 8:45 P.M. that evening, she observed a truck pull into the driveway of the apartment building and noticed [Appellant] and [A.D.] exit that vehicle. She then contacted Sergeant Snavely as she had been instructed to do, after she heard [Appellant] knock on the door to [B.H.'s] apartment. At 8:51 P.M., Sergeant Snavely was again dispatched to the building in response to two calls. One was from [B.H.], as described above, while the other was from [Appellant], who indicated that her brother had taken her children.

Upon arriving at the scene at 8:52 P.M., Sergeant Snavely spoke with [Appellant] regarding her whereabouts that evening. Sergeant Snavely indicated that [Appellant] told him she had been at an AA meeting at a nearby church, that she had arranged for a babysitter to look after the children, that the babysitter was five minutes late and that, during that five-minute period, [A.J.] had taken her children. After hearing [Appellant's] version of the events, Sergeant Snavely told her she was lying because he was on the scene from 8:07 P.M. until 8:30 P.M. and never saw her. At that point, he stopped taking a statement from [Appellant]. He also told her to call her fiancé, [V.D.], so that her three children could be released to their care. Sergeant Snavely remained at the building until 9:15 P.M. when he coordinated the custody exchange of the children to [Appellant] and [V.D.] and advised Lancaster County Children and Youth accordingly. Lancaster County Children and Youth assured Sergeant Snavely that their organization would immediately investigate. As a result of these events, Sergeant Snavely charged [Appellant] with two counts of Endangering the

- 3 -

Welfare of Children (M-1) and one count of Endangering the Welfare of Children (F-3), one count for each of [Appellant's] children.

Trial Court Opinion, 6/16/16, at 1-5 (citations and some footnotes omitted).

Prior to her jury trial, Appellant filed a motion *in limine*, seeking to preclude the prosecution from telling the jury that Appellant was at an Alcoholics Anonymous (AA) meeting when she left her children unattended, as Appellant claimed such testimony was irrelevant and unfairly prejudicial. Instead, Appellant asked that the Commonwealth indicate that Appellant was at a meeting at a church. The Commonwealth argued that using the phrase "church meeting" was inappropriate as it would suggest the gathering had a religious purpose. After the parties submitted briefs on this issue, the trial court filed an order directing the parties to generally refer to the gathering as a "meeting half a block away from the apartment." Order, 10/1/2015.

At the conclusion of the trial, the jury convicted Appellant of all three counts of Endangering the Welfare of Children. The trial court ordered a presentence investigation and deferred sentencing. On February 18, 2016, the trial court held Appellant's sentencing hearing at which Appellant, Appellant's caseworker, and Appellant's pastor testified on Appellant's behalf. The trial court then imposed three concurrent sentences of one year less one day to two years less one day incarceration to be followed by a three-year probationary tail. The trial court gave Appellant credit for time served and determined that she was eligible for work release and pre-release re-entry. On February 26, 2016, Appellant filed a post-sentence

motion, which the trial court subsequently denied on February 29, 2016. Appellant filed a notice of appeal on March 30, 2016 and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises five issues for our review:

I.    The trial court erred in allowing the Commonwealth to present witness testimony that [Appellant] had been at an AA meeting where the Court initially held that attendance at the AA meeting could not be referenced.

II.    The trial court erred in allowing the Commonwealth to play for the jury and admit into evidence three 911 calls when two were hearsay and one referenced the AA meeting that the court previously ruled was inadmissible.

III.    The trial court erred in permitting the Commonwealth to simply tell the jury that [Appellant] had prior *crimen falsi* convictions and then further erred by admitting into evidence what the Commonwealth purported to be certified copies of those convictions without the Commonwealth calling a witness to establish and authenticate [Appellant's] prior record.

IV.    The trial court abused its discretion in denying [defense counsel's] request for a mistrial when a Children and Youth Social Service Case Worker testified to another caseworker working with [Appellant] at a time prior to the incident in question.

V.    The trial court's aggregate sentence of one year less one day to two years less one day of incarceration, followed by a three year period of probation was so manifestly excessive as to constitute too severe a punishment and was clearly unreasonable under the circumstances of this case, and the rehabilitative needs of [Appellant], where the court did not impose an individualized sentence and instead improperly based its sentence, in part, on

- 5 -

[Appellant's] previous conviction for endangering the welfare of children.

Appellant's Brief at ii (reordered for ease of review).

The majority of Appellant's arguments challenge the trial court's discretion in the admission of certain evidence. Our standard of review for evidentiary matters is well-established:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa.Super. 2014) (citation omitted).

In her first evidentiary challenge, Appellant claims the trial court abused its discretion in allowing a prosecution witness to testify that Appellant left her children unsupervised while she attended an AA meeting. Specifically, Appellant argues that the admission of this information was unduly prejudicial and irrelevant in her trial for unrelated charges of Endangering the Welfare of Children. Appellant points out that this testimony violated the trial court's pretrial order which directed that parties should simply indicate that Appellant was attending a "meeting half a block away from the apartment." Order, 10/1/2015.

While the trial court initially ruled in its pretrial order that such a reference to the AA meeting was inadmissible, the trial court recognized that defense counsel proceeded to tell the jury multiple times in her opening statement that Appellant was attending a "church meeting" despite the fact that the Commonwealth voiced its opposition to this phrasing before trial. The trial court agreed with the Commonwealth's concern that the defense counsel had misled the jury by characterizing Appellant's AA meeting as a church meeting as it suggested that Appellant was attending a gathering with a religious purpose. As a result, the trial court ruled that defense counsel had opened the door to allow the prosecution to introduce evidence to clarify the true nature and purpose of Appellant's AA meeting.

We find the trial court did not abuse its discretion in allowing the Commonwealth to further explore Appellant's purported explanation of her whereabouts on the night in question. Defense counsel emphasized in her opening statement no less than six times that Appellant was at a church, directing the jury to "[p]ay attention to where [Appellant] was at the time. She was at a church." N.T. Trial, 11/16/15, at 49. Defense counsel's comments were in direct violation of the trial court's pretrial order limiting the parties to generally refer to Appellant's attendance at a "meeting half a block away from the apartment." Order, 10/1/2015.

Moreover, assuming *arguendo* that the trial court's decision to allow the Commonwealth to elicit testimony concerning Appellant's attendance at the AA meeting was incorrect, the admission of this testimony was harmless

error in light of the overwhelming evidence against Appellant on the charges of Endangering the Welfare of Children. "[H]armless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Shull**, 148 A.3d 820, 846 (Pa.Super. 2016) (citing **Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657, 671–72 (2014)). Accordingly, this claim is meritless.

Second, Appellant argues that the trial court abused its discretion in permitting the Commonwealth to play recordings of 9-1-1 calls for the jury, which she characterizes as inadmissible hearsay.[2] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." **Commonwealth v. Dent**, 837 A.2d 571, 577 (Pa.Super. 2003); Pa.R.E. 801(c). The trial court found the recordings were admissible under the

---

[2] Appellant also challenges the admission of the 9-1-1 call she made, telling the operator that she came back from an AA meeting to find her children missing. For the reasons we set forth above, we find this claim to be without merit.

present sentence impression exception, which regardless of the availability of the declarant to testify at trial, allows the admission of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter ...." Pa.R.E. 803(1).

Appellant specifically claims that the 9-1-1 tapes did not meet the present sense impression hearsay exception as B.H., the declarant on the recordings, did not go into Appellant's apartment and find the children unattended before making the 9-1-1 call. However, the trial court found that B.H. made statements contemporaneous with the events she described. In the first 9-1-1 call, B.H indicated that Appellant's children were unattended as B.H. observed Appellant's three-year old child crying alone on her front porch. In the second 9-1-1 call, B.H. reported that Appellant had returned home as Sergeant Snavely had asked her to do. Moreover, the information in the recordings were corroborated by B.H., who testified and was subject to cross-examination before the tapes were played. Accordingly, the trial court properly exercised its discretion in admitting the 9-1-1 recordings into evidence.

Third, Appellant claims it was error for the trial court to allow the Commonwealth to admit certified copies of Appellant's prior *crimen falsi* convictions without requiring the prosecution to call a witness to authenticate the documents. However, Appellant seemingly ignores the trial court's citation to authority establishing that certified records are "self-

authenticating," meaning that they "require no extrinsic evidence of authenticity in order to be admitted." Pa.R.E. 902(4). Moreover, the trial court noted:

> [i]n Pennsylvania[,] "[t]he use of prior convictions to impeach the credibility of a criminal defendant has long been recognized as a legitimate prosecutorial tool" as long as certain procedural safeguards are met. *Commonwealth v. King*, 316 A.2d 878, 879 (Pa. 1974). Before evidence of the convictions may be admitted, "clear proof" must be adduced that, among other things "the record is authentic and accurate" and "that the present defendant is the same person as that to whom the prior convictions refer." [*Id*.] While "the records custodian's testimony" may be used to establish the authenticity and accuracy of the record," a "duly certified copy of the record" will suffice and "will be considered as competent evidence." [*Id*.] at 879 n.2.

T.C.O. at 21-22. As Appellant offers no advocacy to support his bald conclusion that the prosecution should have been required to present more evidence of the certified records' authenticity, we decline to review this meritless argument further.

Fourth, Appellant claims the trial court erred in denying her motion for a mistrial after a prosecution witness, Children and Youth Agency caseworker Ashley Caban, testified that upon contacting Appellant for the first time, Ms. Caban "was aware that [Appellant] had a caseworker assigned through [the] agency." N.T. Trial, at 103. Appellant argues that it was extremely prejudicial for the jury to know that Appellant had an open case with Children and Youth at the time that she was charged with the instant counts of Endangering the Welfare of Children.

- 10 -

Our standard of review for such a challenge is well-established:

> Our review of a trial court's denial of a motion for a mistrial "is limited to determining whether the trial court abused its discretion." ***Commonwealth v. Fortenbaugh***, 620 Pa. 483, 69 A.3d 191, 193 (2013) (internal quotation marks omitted). A trial court may grant a mistrial "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Commonwealth v. Simpson***, 562 Pa. 255, 754 A.2d 1264, 1272 (2000). A mistrial "is not necessary where cautionary instructions are adequate to overcome prejudice." ***Commonwealth v. Chamberlain***, 612 Pa. 107, 30 A.3d 381, 422 (2011).

***Commonwealth v. Cash***, ---Pa.---, 137 A.3d 1262, 1273 (2016)

In this case, the record supports the trial court's decision to deny Appellant's request for a mistrial. We agree with the trial court's observation that Ms. Caban's statement that Appellant had an agency caseworker assigned to her was "tangential[,] fleeting[, and] … in no way had the unavoidable effect of depriving [Appellant] a fair trial." T.C.O. at 20 (quotation marks omitted). Moreover, the trial court sustained defense counsel's immediate objection and promptly gave the jury a curative instruction that they were only to evaluate Ms. Caban's statements with regard to [Appellant's] alleged conduct on July 11, 2014. Appellant cannot show prejudice resulted from Ms. Caban's comment, as a jury is presumed to follow a trial court's curative instruction. ***See Cash***, ---Pa.---, 137 A.3d at 1273. As such, we find the trial court did not abuse its discretion in refusing to grant a mistrial.

Lastly, Appellant contends the trial court imposed a manifestly excessive sentence. It is well-established that "[a] challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right." *Commonwealth v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa.Super. 2016). In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S. § 9781(b). *Id*. Appellant has filed a timely notice of appeal, preserved his sentencing claim before the trial court, and submitted a Rule 2119(f) statement in his appellate brief.

We may now determine whether Appellant has raised a substantial question for our review. "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Caldwell*, 117 A.3d 763, 768, (Pa.Super. 2015). This Court has provided as follows:

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

- 12 -

When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines.

*Id.* (internal citations omitted).

Specifically, Appellant claims the trial court "double-counted" her prior 2015 conviction for endangering the welfare of a child. Appellant's Brief at 28. Appellant contends that the trial court's reference to the prior conviction was improper as "any prior convictions [A]ppellant had were already accounted for when her prior record score was calculated." Appellant's Brief at 28. This Court has found that an allegation that the trial court has improperly "double-counted" a defendant's criminal history and prior record score is a substantial question for review. *Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa.Super. 2000).

Given the circumstances of Appellant's convictions and her prior criminal record, the sentencing guideline range for Appellant's minimum sentence was nine to sixteen months on each of the three convictions for Endangering the Welfare of a Child. The trial court imposed three concurrent standard range sentences of one year less one day to two years less one day incarceration to be followed by three years probation.

Despite Appellant's argument to the contrary, the record contains no evidence that the trial court improperly considered his prior conviction for Endangering the Welfare of a Child. Rather, the trial court discussed

Appellant's prior conviction in clarifying its rationale in selecting incarceration an appropriate sentencing alternative for the current crimes. The trial court noted that Appellant already been "afforded the privilege of house arrest" as a sentence for the previous conviction and was charged with the instant offenses shortly after completing parenting classes. N.T. Sentencing, 2/18/16, at 11. As a result, the trial court felt a stronger sanction was warranted because Appellant's previous sentence of house arrest had been ineffective as Appellant demonstrated a propensity to reoffend.

Moreover, the trial court fully discussed its reasons for imposing its sentence on the record. The trial court considered Appellant's "comprehensive and detailed Presentence Investigation" as well as the sentencing guidelines, Appellant's character, counsels' arguments, and the testimony given at the sentencing hearing. N.T. Sentencing, at 11. This Court has held that "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive. In those circumstances, we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Corley***, 31 A.3d 293, 298 (Pa.Super. 2011) (citing ***Commonwealth v. Devers***, 519 Pa. 88, 546 A.2d 12, 18 (1988)).

Emphasizing the need to protect the public and to deter Appellant from reoffending, the trial court also emphasized that "[i]ncarceration is warranted because a lesser sentence would depreciate the seriousness of

the crimes." N.T. Sentencing, at 11. In its 1925(b) opinion, the trial court noted that the circumstances of the instant offenses "deserve special mention":

> Appellant made the selfish choice to put her own interests above those of her three children on a hot July night by leaving an infant, a three-year old, and a six-year-old unattended in an unlocked, converted third-story attic without a fan or air-conditioning for well over an hour. Indeed, making the situation even more egregious is that [Appellant] had a window air-conditioning unit in her own bedroom, but decided not to share it with her children. During [Appellant's] absence, her three-year old son opened an exterior door and made his way down a set of steep, rickety stairs to his neighbor's porch, where he started crying for his mother.
>
> ***
>
> [Appellant] left her children to fend for themselves for an indeterminate amount of time before arriving home nearly forty-five minutes after the meeting she claims to have attended had concluded – a meeting that was supposedly merely steps away from her home.

T.C.O. at 25-27. Accordingly, we find that the trial court properly exercised its discretion in imposing Appellant's sentence.

For the foregoing reasons, we affirm the judgment of sentence.

Affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017

- 15 -