69 A.3d 191

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Jack W. FORTENBAUGH, II, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 7, 2012.

Decided June 17, 2013.

Elmer D. Christine Jr., Esq., East Stroudsburg, Michael T. Rakaczewski, Esq., Kingston, Monroe County District Attorney's Office, for Commonwealth of Pennsylvania.

Frederick Mark Cutaio, Esq., Monroe County Public Defender's Office, Wieslaw T. Niemoczynski, Esq., Stroudsburg, for Jack W. Fortenbaugh, II.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice EAKIN.

The Superior Court erred in this case when it overturned the jury verdict and vacated the judgment of sentence based on two references at trial to requests that the defendant take a polygraph test. Because we find the references were not prejudicial, we reverse the Superior Court's order and remand for reinstatement of the trial court's judgment of sentence.

Jack W. Fortenbaugh, II was charged with rape and other related offenses for incidents involving the sexual abuse of his stepdaughter. Fortenbaugh first abused her when she was approximately 12 years old, and again in 2005 and 2006, when she was approximately 16 years old. At trial, victim testified to the abuse; the Commonwealth also called a friend of the victim, who stated she was also abused by Fortenbaugh. Following this testimony, the Commonwealth played for the jury a CD recording of an interview of Fortenbaugh conducted by Detective John Bohrman; the jury heard Detective Bohrman asking if Fortenbaugh would take a polygraph test. Counsel for Fortenbaugh immediately objected. A side-bar discussion ensued, after which the trial court directed the jury to disregard any reference to the polygraph test.

The trial court ordered the Commonwealth to redact or skip over any further mention of the polygraph test when playing the CD, but when the CD resumed, a second reference to a polygraph test was heard.[1] Fortenbaugh's counsel objected

1. It is unclear what exactly the jury heard, and the trial transcript does not shed any light on this matter. *See* N.T. Trial, 5/6/09, at 57. Both parties described this as a second "reference to a polygraph." Appellee's Brief, at 5, 9; Appellant's Brief, at 6, 9. The trial court character-

again.  The trial court issued the same cautionary instruction.
The Commonwealth resumed playing the CD, and no other
polygraph references were made.  The redacted CD con-
tained, however, two obvious gaps in the recording.  Subse-
quently, Fortenbaugh's counsel moved for a mistrial, but the
trial court denied the request.  The jury found Fortenbaugh
guilty of rape and other related charges.

On appeal to the Superior Court, Fortenbaugh argued the
trial court abused its discretion in not granting his mistrial
motion based on the two direct polygraph references and the
two obvious gaps in the recording, which suggested further
discussion about the test.  The Superior Court agreed, finding
the instant case "more closely mirror[ed]" *Commonwealth v.
Watkins*, 750 A.2d 308 (Pa.Super.2000), because here, as in
*Watkins*, there were multiple direct and indirect references to
the polygraph test, and the references were not inadvertent.
*Commonwealth v. Fortenbaugh*, No. 2460 EDA 2009, unpub-
lished memorandum at 14–15, 13 A.3d 976 (Pa.Super. filed
September 9, 2010).  The Superior Court also noted "similar[ ]
to *Watkins*, the sequence of the polygraph references in
[Fortenbaugh]'s case allowed the jury to infer [Fortenbaugh]'s
guilt." *Id.*, at 15.  Specifically, the two direct references to
the test "suggested that [Fortenbaugh] refused to take the
test the first time he was asked[,]" and "the two redacted
portions of the recording permitted the jury to speculate that
[Fortenbaugh] either repeatedly refused to take the test, or
that it was in fact administered and the redacted portions
were the discussion of the results of that test." *Id.*, at 15–16.
The Superior Court concluded "the references and redacted
portions of the recording, taken as whole, raised an inference
concerning [Fortenbaugh]'s guilt and caused him prejudice to
such a degree that the [trial] court's curative instruction,
albeit thorough, was insufficient to remedy it." *Id.*, at 16–17.
Accordingly, the Superior Court reversed and remanded for a
new trial.  The Commonwealth sought allowance of appeal,
which we granted.

ized it as "another mention of [Fortenbaugh]'s ability to take a poly-
graph test."  Trial Court Opinion, 1/26/10, at 8.

■ We find the Superior Court failed to properly apply the standard of review for denial of a mistrial motion, and further distinguish this case from *Watkins.* "A trial court is required to grant a mistrial only where the alleged prejudicial event may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980, 986 (1984) (citation omitted). In *Commonwealth v. Chamberlain,* 612 Pa. 107, 30 A.3d 381 (2011), this Court held:

It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Id.,* at 422, 480 A.2d 980 (internal quotation marks and citations omitted).

■ In determining whether a testimonial reference to a polygraph test warrants a mistrial, three factors are generally considered: (1) whether the Commonwealth prompted the reference to the polygraph test; (2) whether the reference suggested the results of the polygraph; and (3) whether the trial court issued prompt and adequate instructions regarding the unreliability and inadmissibility of polygraph tests. *See Commonwealth v. Miller,* 497 Pa. 257, 439 A.2d 1167, 1171 (1982). After consideration of these three factors, courts must assess the resulting prejudice to the defendant, an evaluation which turns on whether such reference, considered in light of the circumstances of the case, causes an inference to arise as to the defendant's guilt or innocence. *Id.,* at 1170.

In *Watkins*, the Superior Court, relying upon *Miller* and other decisions which applied the *Miller* analysis, determined the defendant was prejudiced by references to a polygraph test when the trial court permitted the Commonwealth to reveal the defendant abruptly changed his story and admitted to the crime when police stated a polygraph test could be administered. Additionally, the trial court in *Watkins* did not issue a cautionary instruction. While the results of the polygraph were not discussed, the Superior Court concluded the jury could easily have inferred the defendant failed the test due to the abrupt change in his story.

The Superior Court's reliance on *Watkins* was misplaced. In *Watkins*, there were multiple, deliberate references to the polygraph test. "[T]he Commonwealth directly referenced the polygraph test in its opening argument, on direct examination and in its closing argument." *Watkins*, at 317. Additionally, "the Commonwealth fully intended to and later accomplished making numerous direct references to [the defendant's] offer to take a polygraph test." *Id.*, at 318. The circumstances creating prejudice in *Watkins* are simply not present here. It is clear disclosure of the references on the CD was not intentional. The trial court determined: "Based on the specific facts of the case, we find that there has been no showing of any intent on the part of the Commonwealth to prejudice [Fortenbaugh] to the point of denial of a fair trial or any bad faith on the part of the Commonwealth in playing the CD." Trial Court Opinion, 1/26/10, at 8. Our review of the record does not disclose anything to disturb this conclusion. Additionally, it is clear the references were not as extensive or numerous as in *Watkins;* there were only two short, direct references to a polygraph test, which fails to establish intent to prejudice by the Commonwealth.

In *Watkins*, the jury learned the defendant offered to take a polygraph test and that one was indeed performed. *Watkins*, at 319. Additionally, the jury learned the defendant abruptly changed his story once the officer told him a polygraph test could be performed if he wished. *Id.* In the instant case, there was no mention in the recording whether a test was

administered or what happened after the request to Fortenbaugh was made. *See* Trial Court Opinion, 1/26/10, at 8 ("[T]he jury did not hear whether [Fortenbaugh] took the polygraph test or, if he did, what the results of that test were.").

Finally, and equally important, in *Watkins*, the trial court "did not instruct the jury in any manner concerning the references made to the polygraph tests." *Watkins*, at 317. Conversely, in this case, the trial court issued a cautionary instruction to the jury. After the jury heard the first reference to the test, a side-bar discussion ensued, following which the trial court instructed the jury:

> Ladies and gentlemen, I just want to let you know what's going on so you understand. On this CD, audio, you heard—on this CD, you heard Detective Bohrman mention the ability of Mr. Fortenbaugh—requested him to take a polygraph. We all know that.
>
> So that you understand, just the asking of that question is completely irrelevant to these proceedings and is not evidence in this case that is worth anything whatsoever.
>
> You're not going to know whether he took one or whether he didn't and if he did what the results are. And the reason for that is that polygraphs are highly unreliable and are not good evidence.
>
> So whether he agreed to take one or not and, if he did, what the results are, are completely irrelevant and are not whatsoever to be considered by any of you with respect to your deliberations and to be used as evidence in this case, okay. Are we all clear on that?
>
> That's why they're not admissible, nor is whether—I mean, it's just irrelevant. It is an investigative tool that's used in some situations. It's nothing that is compelling under the law in terms of someone charged with a crime.
>
> Having to take one or—you know, it doesn't matter, and it's not to be considered by you as evidence. So you're not going to know whether Mr. Fortenbaugh took one or not and, if he did, what the results are, and you can't use that as

any evidence against him, the mere fact that he was asked that question by Detective Bohrman, okay. You may continue the audio.

N.T. Trial, 5/6/09, at 55–57. After the instruction, the Commonwealth resumed playing the recording. Upon the jury hearing the second reference, the trial court stated: "Same caution to the jury, please." *Id.*, at 57.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated: "[O]ur instruction, read in its entirety, was sufficient to communicate to the jury that they could draw no inference, adverse or favorable, from the CD's indication that [Fortenbaugh] was offered a polygraph test." Trial Court Opinion, 1/26/10, at 8. We agree. The instruction unambiguously and correctly stated polygraph tests are not only inadmissible at trial, but are so because they are unreliable, thus belittling them and lessening the danger of the jury assigning any weight to the matter. *See, e.g., Miller,* at 1170–71; *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325, 333–34 (1971).

Considering the circumstances of this case as *Miller* requires, we do not believe the references were such that they deprived Fortenbaugh of a fair and impartial trial.[2] While the references were improper and must lie at the feet of the Commonwealth, they were nonetheless not intentional. No indication if testing occurred is suggested; *a fortiori,* no results were suggested. The mentions were not thereafter utilized, and the trial court promptly and adequately instructed the jury at some length to disregard any references to the test and not to draw any inference from them.

2. Construing the two redacted portions of the recording as disguising references to a polygraph test is a leap; we disagree with the Superior Court's further leap that these omissions "permitted the jury to speculate that [Fortenbaugh] either repeatedly refused to take the test, or that it was in fact administered and the redacted portions were the discussion of the results of that test." *Fortenbaugh,* at 16. This conclusion seems not only tenuous, but erroneously assumes the jury disregarded the trial court's clear instructions on the subject. *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663, 672 (1992) ("The presumption in our law is that the jury has followed [the] instructions [of the trial court].").

■ Not every mention of a polygraph is prejudicial or worthy of a mistrial. Considering the circumstances above described, we conclude the Superior Court erred in finding Fortenbaugh was prejudiced by the references to the polygraph test. Accordingly, the Superior Court's order is reversed, and the case is remanded for reinstatement of the trial court's judgment of sentence.

Order reversed; case remanded. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices BAER and TODD join the opinion.

Justice SAYLOR files a concurring opinion.

Justice McCAFFERY files a concurring opinion.

Justice SAYLOR, concurring opinion.

I concur in the result reached by the majority and write further to clarify that, in my view, the touchstone for determining when a testimonial reference to a polygraph test warrants a mistrial should focus on an assessment of the resulting prejudice to the defendant, an evaluation that turns on whether such reference, considered in light of the circumstances of the case, raises an inference as to the defendant's guilt or innocence. *See Commonwealth v. Miller*, 497 Pa. 257, 264, 439 A.2d 1167, 1170 (1982). In this regard, the majority's three-factor analysis, *see* Majority Opinion, at 486–88, 69 A.3d at 193–94, represents a particularized review of the circumstances at issue in *Miller* rather than a standard generalizable to all cases. Indeed, as the Superior Court has recognized, "[w]hether a reference to a polygraph test constitutes reversible error depends upon the circumstances of each individual case and, more importantly, whether the defendant was prejudiced by such a reference," *Commonwealth v. Watkins*, 750 A.2d 308, 317 (Pa.Super.2000).

Assessing prejudice here, I view the facts as presenting a closer question than the majority. As the Superior Court observed, "the case essentially centered on [the victim's] word against [Appellee's]," *Commonwealth v. Fortenbaugh*, 13 A.3d

976 (Pa.Super.2010) (table), No. 2460 EDA 2009, *slip op.* at 16, which elevates the potential impact of inferences stemming from testimony referencing a polygraph test that Appellee may or may not have taken. However, on balance, I do not believe that such references, even in combination with the "two obvious gaps in the recording," Majority Opinion, at 486, 69 A.3d at 192, raised an inference as to his guilt or innocence such that a mistrial was warranted, particularly given that there was no indication that the jury knew whether a polygraph test was administered or, if so, what the results revealed, *see id.* at 195.

As a final note, I am troubled by the lack of consequence assigned to the Commonwealth's carelessness, especially in light of the fact that the trial court issued several admonitions to the prosecutor to ensure that the references to the polygraph test were correctly redacted. *See id.* at 486, 69 A.3d at 192. In my view, it would not be inappropriate for a trial judge, evaluating a motion for a mistrial, to give weight to the prosecution's conduct concerning the prohibited disclosure of the defendant's potential submission to a polygraph test.

Justice McCAFFERY, concurring.

I agree with the majority that Appellee has failed to demonstrate the prejudice necessary to warrant a new trial and that *Commonwealth v. Watkins*, 750 A.2d 308 (Pa.Super.2000), relied upon by the Superior Court below, is readily distinguishable from the instant case. I therefore concur in the majority's reversal of the order of the Superior Court.

I would note with respect, however, that this case is a closer call than the majority opinion indicates because of the troubling behavior demonstrated by the Commonwealth. The question of whether a new trial should be ordered because of an in-court reference to a polygraph test is one heavily dependent on the relevant facts. Accordingly, a trial court may take into account the particular role a party had in divulging the information at trial and the motivations for the disclosure.[1] Here, however, the trial court determined that

1. As the majority indicates, *Commonwealth v. Miller*, 497 Pa. 257, 439 A.2d 1167, 1171 (1982), did not set forth a formalized test to be applied

there was "no showing of any intent by the Commonwealth to prejudice [Appellee] to the point of denial of a fair trial or any bad faith on the part of the Commonwealth in playing the CD [containing the references to the polygraph test]." Trial Court Opinion, dated 1/26/10, at 8. The trial court was in the best position to make this judgment, and, with no prejudice to Appellee, the trial court appropriately determined that Appellee was not entitled to a new trial.

However, although the trial court found that Appellee had failed to prove that the Commonwealth did intend to deprive Appellee of his rights, I respectfully do not believe that the record supports the majority's assertion that the two references to the polygraph test were, in general, "not intentional," indeed, "clear"[ly] not intentional. *See* Majority Opinion, at 487–88, 490, 69 A.3d at 193–94 and 195. The references to the polygraph test were contained in two separate places in a CD recording of a police interview of Appellee that the Commonwealth had in its possession and introduced into evidence. We must presume that the Commonwealth had actually listened to the CD before introducing it into evidence, and that the Commonwealth was cognizant of its potential impact upon the jury. The Commonwealth may have introduced the references to the polygraph test out of gross negligence—we do not know. However, I believe that it is simply unwarranted to unhesitatingly state, based on the record in this case, that the references to the polygraph test were "not intentional."

Nevertheless, because the trial court found that there was **no concrete evidence** that the Commonwealth intended to prejudice Appellee, and because no actual prejudice was shown for the reasons articulated by the majority opinion, I agree with the result arrived at by the majority opinion.

in these cases; rather, the three enumerated "factors" expressed in *Miller* are simply a distillation of the matters discussed by the Court therein concerning whether a new trial was warranted under *Miller's* particular set of facts. *See Commonwealth v. Briggs*, 608 Pa. 430, 12 A.3d 291, 339 (2011) (citing and applying *Miller* without formalizing its analysis into a three-pronged test).