J-S13041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAHEED WARREN | : | |
| | : | |
| Appellant | : | No. 1124 EDA 2016 |

Appeal from the Judgment of Sentence November 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008204-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAHEED WARREN | : | |
| | : | |
| Appellant | : | No. 1125 EDA 2016 |

Appeal from the Judgment of Sentence November 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008205-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAHEED WARREN | : | |
| | : | |
| Appellant | : | No. 1126 EDA 2016 |

Appeal from the Judgment of Sentence November 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008206-2014

J-S13041-17

BEFORE: BENDER, P.J.E., LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:              **FILED JUNE 30, 2017**

Appellant, Shaheed Warren, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions at three separate docket numbers of two counts of first-degree murder,[1] and one count each of firearms not to be carried without a license,[2] attempted murder,[3] and aggravated assault.[4] Appellant challenges the weight of the evidence as well as the trial court's denial of his request for a mistrial. We affirm.

The trial court's opinion summarized the relevant facts of this case as follows:

> In the early morning hours of May 2, 2014, [Appellant] contacted [Cinquetta] Perrin for a ride to the Mark V Lounge (the "Lounge") to buy alcohol. Perrin parked her car on the street outside the Lounge while [Appellant] entered, and she waited while [Appellant] was inside. While [Appellant] was in the bar, he had a confrontation with another Lounge patron, Dontae Brown, after one bumped into the other and the two had an argument about apologizing.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 901(a).

[4] 18 Pa.C.S. § 2702(a).

- 2 -

At approximately 1:25 a.m. the Lounge began closing and ushered all the patrons out onto the street. Upon exiting the Lounge with the other patrons, while [Appellant] was next to Brown, [Appellant] pulled a firearm out from his pants waistband and shot Brown and two other victims, firing approximately five or six times. [Appellant] shot Brown from only a few inches away.

After shooting Brown, [Appellant] fled towards a "hack stand." [Appellant] then took a hack taxi to 56th Street and Lansdowne Ave. [Appellant] later called Perrin and asked if she was all right.

Police responded to the area and found three gunshot victims on the street. Police found James Byrd bleeding on the east side of 52nd Street in front of the ABC Discount store. Police found Brown and Ronald Edwards on the east side of 52nd Street, a few buildings north from Byrd. Police loaded the victims into police vehicles and transported them to the hospital. Brown and Byrd were pronounced dead at the hospital. Edwards provided flash identification information to police, describing the shooter as a black male, bald head, wearing a blue shirt with a white collar.

Perrin provided a statement to police on May 7, 2014, in which she identified [Appellant] as the shooter. [Appellant] was later identified [] in a photo array by eyewitness Jerry Carroll. While incarcerated pending trial, [Appellant] made a series of phone calls, asking individuals to go and "talk to" the various witnesses who had testified or made statements against [Appellant].

Police recovered two projectiles in front of the Lounge, one on [the] street and one in the front door. Police also recovered video surveillance footage from a business on the corner of Wilton St. and Girard Ave., which recorded [Appellant] leaving the scene.

Brown suffered a total of six gunshot wounds: one to his right hand, a close range wound through his left shoulder that penetrated his lungs and heart, and four shots to his back. Brown died as a result of internal bleeding due to the gunshot wounds. Two projectiles were recovered from Brown. Byrd was shot once in his left

chest, which penetrated his left lung, left atrium, and left ventricle. One projectile was recovered from Byrd. Byrd died as a result of internal bleeding due to the gunshot wound. Medical records indicate that Edwards underwent multiple surgeries as a result of a gunshot wound, which damaged Edwards' liver. Analysis of the projectiles revealed that they were all fired from the same firearm.

Trial Ct. Op., 7/25/16, at 2-4 (footnotes and record citations omitted). At trial, Cinquetta Perrin also testified to the following on direct examination:

[Commonwealth:] Now, after you went to—you said you went to the deli and you called your friend. Where did you go to?

[Witness:] I just sat in the deli. I just waited for him to come get me and that's when [Appellant] called me and he asked me was I'm [sic] all right and I said no, and he just said, "I ain't meant to kill the old head, but he was in the way."

[Defense Counsel]: Objection.

[Witness]: And I hung up.

[Defense Counsel]: Objection.

[Court]: What's the basis for your objection?

[Defense Counsel]: Statement of [Appellant]. It's never been provided to the defense.

[Commonwealth]: She says in her statement she called [Appellant]—he called her rather.

[Defense Counsel]: She says that part.

[Court]: The content of what was said is not in the statement?

[Commonwealth]: Parts of it.

- 4 -

[Court]: Do you want me to have a look and see what part of it was turned over? Statement of [Appellant] is mandatory discovery.

[Commonwealth]: She said, "Right after it happened [Appellant] called my phone and asked me if I was all right."

[Court]: That's all it says?

[Commonwealth]: It does, Your Honor.

[Court]: Is this the first time you're hearing this?

[Defense Counsel]: Pretty much.

[Court]: Is today the first time you heard it?

[Commonwealth]: Yes, Your Honor.

[Court]: Did you let him know?

[Commonwealth]: I did not. I just before we went in, I asked her the content of the call and I neglected to tell [defense] counsel. I wanted to be sure, I just didn't so we can—I would agree that that could be stricken if you wish.

[Defense Counsel]: It's kind of hard to unring the bell.

[Court]: What are you asking?

[Defense Counsel]: I'm asking for a mistrial.

[Court]: All right. That would be a remedy for—I think it would be inappropriate since the Commonwealth, first of all, just learned about it today. I'm not 100% sure why she didn't let you know that before we came back in here, which would be the ordinary thing to do.

[Commonwealth]: Right.

[Court]: So I'll exclude it and I won't consider it and we'll move on. Go ahead.

N.T., 11/23/15, at 132-34.

Thereafter, on November 25, 2015, the trial court convicted Appellant of the aforementioned offenses, and sentenced him to an aggregate term of two life sentences without the possibility of parole, plus twenty to forty years' imprisonment. Appellant timely filed post-sentence motions, which the court denied on March 21, 2016. Appellant filed a timely *pro se* notice of appeal on April 7, 2016.[5] The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied.

Appellant raises the following issues for our review:

1. Did the [Trial] Court err in failing to grant [] Appellant's post sentence motion that the verdict was against the weight of the evidence?

2. Did the [Trial] Court err in failing to grant a mistrial when a witness, with the knowledge of the prosecutor, testified that [] Appellant confessed to the crime, without disclosing that statement to the defense?

Appellant's Brief at 7.

In his first issue, Appellant argues his verdicts were against the weight of the evidence, as the eyewitness testimony of both Cinquetta Perrin and Jerry Carroll was unreliable. Appellant contends each of these witness' testimony was full of inconsistencies, specifically regarding Appellant's

---

[5] On May 27, 2016, this Court granted trial counsel's application to withdraw, and the trial court subsequently appointed appellate counsel.

appearance and clothing on the night of the shooting. Appellant concludes

his convictions should be reversed. We disagree.

Our standard of review regarding challenges to the weight of the

evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa. Super. 2011)

(citations omitted).

Instantly, in its opinion, the trial court discussed Appellant's weight of

the evidence claim as follows:

> Cinquetta Perrin, who knew [Appellant] for several years prior to the shooting, testified that she watched as [Appellant] pulled out a gun from his waistband, prompting her to duck, and that she then heard shooting. Perrin testified that she did not see anyone else with a firearm. Perrin also testified that she watched as [Appellant] fled the scene following the shooting. While Perrin did not initially disclose [Appellant's] identity to police, this was not due to her inability to identify [Appellant], but because she was scared and was hoping to "get out of the situation . . . ." That [Appellant] was the only person with a gun was corroborated by the ballistics evidence, which showed

that all the recovered projectiles from this shooting were of the same caliber and fired from the same firearm.

Jerry Carroll, an eyewitness who was walking past [Appellant] on the sidewalk just prior to the shooting, testified that he turned and saw [Appellant] pull out a gun and begin shooting. Carroll's testimony at the preliminary hearing, reiterated at trial, detailed how Carroll watched [Appellant] shoot Brown from only a few inches away, a distance that was confirmed by the medical examiner, Dr. Edwin Lieberman. Carroll testified that [Appellant] then fled the scene, running towards 52nd Street. Carroll also identified [Appellant] in a photo array six days after the shooting.

Andre Shaw, who did not see the shooting, testified at trial that [Appellant] and Brown got into a verbal confrontation inside the Lounge shortly before Shaw ushered everyone out onto the street. Shaw testified that he heard gunshots after [Appellant] and Brown went outside.

Randolf Joyner, the hack taxi driver who operated on the corner of 52nd Street and Girard Ave., testified that he was approached by [Appellant], whom he recognized from the neighborhood, for a ride away from the area. Joyner testified that he described [Appellant] to police as a black male, bald, and wearing a black rugby shirt with a gray collar. This description substantially matched the description of the shooter provided by the surviving gunshot victim, Ronald Edwards, immediately after the shooting. Edwards told Officer Mauricio Acevedo that the shooter was a black male, bald, and wearing a blue shirt with a white collar. Detective Billy Golphin testified that police later executed a search warrant at [Appellant's] home and recovered a black shirt with a white collar under the porch. By stipulation of the parties, [Appellant's] DNA was present on this shirt.

The testimony of Perrin, Carroll, and Joyner concerning [Appellant's] flight from the area after the shooting was corroborated by video surveillance footage recovered from a Stop and Go store on the corner of Girard Avenue and Wilton Street. Additionally, the Commonwealth presented

recorded telephone calls from prison during which [Appellant] attempted to enlist people to "talk with" the witnesses who had made statements against him. [Appellant] specifically mentioned Perrin, Carroll, and Joyner in these phone calls. During one such conversation, [Appellant] asked his mother to contact "Manny" to help with the witnesses. Perrin testified that she subsequently was approached and threatened by a man named Manny Black regarding her testimony. Similarly, Joyner testified that [Appellant's] "dogs" had come to Joyner and told him not to snitch. These attempts at witness intimidation were compelling evidence of [Appellant's] consciousness of guilt.

\* \* \*

The evidence outlined above plainly established that [Appellant] committed the crimes of which he was convicted. Because the evidence fully supported the identifications of [Appellant] as the shooter, the [c]ourt did not abuse its discretion in denying [Appellant's] motion for a new trial.

Trial Ct. Op. at 5-7, 8 (record citations omitted). We agree with the trial court's conclusions. Despite any inconsistencies regarding Appellant's physical description, the court's determination of the credibility of the Commonwealth's witnesses was reasonable given Cinquetta Perrin and Jerry Carroll's eyewitness identification of Appellant as the shooter. *See Devine*, 26 A.3d at 1146. Thus, Appellant's weight of the evidence issue merits no relief.

In his second issue, Appellant argues that the introduction of his confession into evidence without prior disclosure to the defense warranted a mistrial. Specifically, Appellant contends Cinquetta Perrin's testimony that Appellant confessed to the shooting was prejudicial, as the Commonwealth

was aware of her testimony and provided no justification for the failure to disclose the information to defense counsel prior to trial. Appellant concludes that fairness requires that he be granted a new trial. We disagree.

The court may grant a mistrial "[w]hen an event prejudicial to the defendant occurs during trial[.]" Pa.R.Crim.P. 605(B). A mistrial is a remedy of last resort; "[a] trial court is required to grant a mistrial only where the alleged prejudicial event may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013) (citation omitted). Furthermore, "a trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (citation omitted). The decision to deny a mistrial is subject to review for abuse of discretion. *Fortenbaugh*, 69 A.3d at 193.

Here, the trial court concluded:

> [T]he record demonstrates that since the challenged statement has not been provided to defense counsel, the [c]ourt excluded it from evidence and explicitly stated that the statement would not be considered. Because the [c]ourt was fully capable of ignoring the excluded evidence, there were no valid grounds for a mistrial.

Trial Ct. Op. at 9 (citation omitted). We agree with the trial court's conclusions. Following defense counsel's objection and request for a mistrial, the court clearly stated on that record "I'll exclude [the confession]

- 10 -

and I won't consider it and we'll move on."[6]  N.T. at 134.  Accordingly, the trial court properly denied Appellant's request for a mistrial, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2017

---

[6] In any event, we find the error of Cinquetta Perrin's testimony regarding Appellant's confession as harmless because it did not prejudice Appellant and the evidence of guilt was so overwhelming that any prejudicial effect of the error could not have contributed to the verdict.  **See Commonwealth v. Melvin**, 103 A.3d 1, 20 (Pa. Super. 2014).