J-A29003-19

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID E. LOGAN | : | |
| | : | |
| Appellant | : | No. 178 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 2, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000028-2018

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                      FILED JUNE 10, 2020

Appellant, David E. Logan, appeals from the judgment of sentence of 11-23 months' incarceration, followed by one year of probation, and restitution in the amount of $14,779, imposed following his conviction for identity theft and forgery.  After careful review, we affirm with respect to Appellant's trial court error and sufficiency claims.  However, we are compelled to vacate Appellant's sentence due to an illegal award of restitution and, therefore, we remand for resentencing on that basis.  We decline to reach Appellant's after-discovered evidence claim, without prejudice to his ability to raise the claim again in a post-sentence motion or on collateral review.

The trial court summarized the facts adduced at trial as follows:

Essentially the Commonwealth proved [Appellant] wished to purchase a new 2016 Yamaha 700 cc, 4-wheel off road vehicle.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Witnesses from the Yamaha shop indicated that [Appellant] was unable to purchase the vehicle without financing and efforts were made to obtain in-house financing. Testimony established that [Appellant]'s initial request for financing was rejected. Two days later, [Appellant] received a phone call indicating that he had been approved for financing.

The testimony and exhibits offered at trial proved that the approval of [Appellant]'s loan was based on the financial information of [his] father, [David Logan, Sr., ("Father")] rather than [Appellant]. The testimony and other evidence also indicated that the loan was approved based on the social security number and credit history of [Father].

[Appellant] testified that he visited [Father], at [Father]'s residence, and they discussed [Appellant]'s interest in purchasing an ATV. [Appellant] also testified that both he and [Father] utilized [Father]'s home computer to view online photographs of a similar ATV and that [F]ather and [Appellant] viewed financial options on a particular website related to the local Yamaha shop.

The facts ... establish[ed] that the email address of [Father] was the email address used for the credit application. Ultimately, Synchrony Bank approved financing based on [Father's] credit history.

At some time not long after [Appellant] had purchased the ATV, [Father] sought to purchase certain motor vehicles. This precipitated a "credit check" of [Father]'s financial obligations, and [Father]'s loan was rejected. It was determined that the Synchrony Bank's loan obligation was that of [Father], not [Appellant].

[Father] testified that he was not aware of the transaction until his credit was denied. Essentially, [Father] denied permitting his son to use his credit information and denied that he had obtained the loan for his son.

The defense attacked the business practices of the Yamaha shop and pointed out potential shortcomings in the Yamaha shop's procurement of financing to include failure of the Yamaha shop to obtain the driver's license information of [Appellant].

In addition, the defense suggested that the version of events as told by [Appellant] was accurate. The defense raised motivation,

bias, and prejudice to suggest [Father]'s testimony was untruthful.

Specifically, [Appellant] indicated that there had been some lingering animosity between [Appellant] and [Father] and also that [Father] was motivated to be untruthful about the financing circumstances as [Father] was motivated by his desire to purchase a vehicle with financing which was not approved because of the existing loan.

Trial Court Opinion ("TCO"), 3/27/20, at 4-7.

The Commonwealth charged Appellant with theft by deception, 18 Pa.C.S. § 3922(a)(1); identity theft, 18 Pa.C.S. § 4120(a); and forgery, 18 Pa.C.S. § 4101(a)(2). A jury trial was held on October 4, 2018. After the close of the Commonwealth's case, the trial court dismissed the charge of theft by deception. At the end of trial, the jury convicted Appellant of the remaining offenses. On January 2, 2019, the trial court sentenced Appellant as noted above.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement with the trial court on March 5, 2019. The trial court subsequently filed a "Statement Pursuant to Pa.R.A.P. 1925[(a)]" on April 3, 2019. On February 7, 2020, we remanded for the trial court to file a more detailed Rule 1925(a) statement, and the trial court promptly complied on March 27, 2020.

Appellant now presents the following questions for our review:

[I.] Was the evidence sufficient to convict [Appellant] of (1) identity theft and (2) forgery[,] and did the Commonwealth present sufficient evidence beyond a reasonable doubt to prove that the completion of a motor vehicle transaction was not the result of a mistake?

[II.] Did the court abuse its discretion and fail to declare a mistrial when the prosecutor became argumentative with [A]ppellant[,] who testified and was asked if he was calling his father a liar?

[III.] Should the sentence of restitution to Synchrony Bank be vacated as not a party to whom restitution shall be paid and otherwise without proof of claim submitted by or on behalf of the victim at the sentencing?

[IV.] Should this case be remanded to the trial court for an inquiry into after[-]discovered evidence that tends to exculpate [A]ppellant and contradict the version of events provided by his father as the accuser?

Appellant's Brief at 11.

I

Appellant's first claim presents multiple sub-claims that the evidence was insufficient to convict him of identity theft and forgery. He argues that there was insufficient evidence that he filled out the loan application that was processed, and that the Commonwealth failed to present sufficient evidence that the offenses were the product of a mistake rather than criminal intent.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

> Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of

the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

Commonwealth v. Miller, 172 A.3d 632, 640 (Pa. Super. 2017) (citations omitted).

"A person commits the offense of identity theft of another person if he possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose." 18 Pa.C.S. § 4120(a). The mens rea element of identity theft is not defined by the statute; thus, the minimum mens rea element for the offense is recklessness. See 18 Pa.C.S. § 302(c) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.").

> A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
> (1) alters any writing of another without his authority; (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S. § 4101(a) (emphasis added). The minimum mens rea requirement for forgery is knowing facilitation of a fraud. Id.

- 5 -

Here, the trial court rejected Appellant's sufficiency claim, finding generally that the jury was free to believe the Commonwealth's witnesses, and discredit Appellant's testimony, in concluding that he was guilty of identity theft and forgery. See TCO at 7-10. We agree. Although Appellant argues that there was no proof that he filled out the loan application, the jury could have rationally inferred from the circumstances of this case that he had done so. See Miller, 172 A.3d at 640 (recognizing a "conviction may be sustained wholly on circumstantial evidence"). Specifically, the jury could have reasonably determined that Appellant's prior unsuccessful application for credit, his sudden approval thereafter using Father's identity on an application bearing Appellant's signature, Father's testimony that 1) he had not consented to the use of his credit for the purchase of the vehicle, and 2) Appellant's admission to Father that he had used Father's credit to purchase the vehicle, collectively demonstrated beyond a reasonable doubt that Appellant had knowingly or intentionally, and not mistakenly, used Father's identity to secure financing for the ATV. Accordingly, we conclude that Appellant's sufficiency claim lacks merit.

## II

Next, Appellant argues that the trial court erred in denying his motion for a mistrial based on alleged prosecutorial misconduct during the Commonwealth's cross-examination of Appellant. As background, Appellant and Father both testified regarding a meeting they had at Bob Evans after Father learned that an ATV had been financed with his credit information.

Father testified that Appellant reluctantly admitted to Father that he had used Father's identity to purchase the ATV. N.T., 10/4/18, at 63. Appellant's recollection of the meeting was different. He testified that Father had agreed to help finance the ATV, and had submitted his own information to the Yamaha dealer. Id. at 158. He indicated that he had asked Father to take over the payments after Appellant lost his job, and believed Father had done so. Id. at 159. He then testified that the meeting at Bob Evans occurred after Father called him and complained that no payments had been made on the loan. Id. Appellant stated that Father told him that "the only way for him to restore his credit … was to press charges…." Id. at 160.

During cross-examination, the prosecutor confronted Appellant about Father's testimony that Appellant had essentially confessed to him. Id. at 166. Appellant answered that he recalled his father asking if he had stolen his identity to purchase the ATV, but he denied admitting to it. Id. at 167. During this line of questing, the trial court sustained several defense objections to the argumentative nature of the way the questions were being phrased by the prosecutor. Id. at 166-68.

Eventually, the prosecutor asked Appellant, "Okay, now you heard what your dad was testifying to, are you saying your dad is lying?" Id. at 168. Appellant's trial counsel immediately objected and requested a sidebar, where counsel stated:

> I object, Your Honor, and I would move for a mistrial. That's the most grievous thing one can do is to have [him say to] the jury … that his father is a liar. People remember things differently, he

indicated that he had some fuzzy memories about things and maybe he believes what that [sic] said, but it doesn't make a son calling his dad a liar and it's an outrageous thing to ask.

Id. at 168-69. The trial court denied the motion for a mistrial, and then asked defense counsel, "[D]o you want an instruction at all or nothing at all? I have to give you that option." Id. at 169. Appellant's counsel declined a curative jury instruction. Nevertheless, the trial court immediately issued, sua sponte, the following instruction to the jury:

Okay, ladies and gentlemen, when you hear an objection that says argumentative, what that means is not that there's a conflict, but that there is a statement made by the Defendant [sic][1] that is not a question and is sort of designed to influence you. So[,] I would just remind you that that's not a proper way to question. Then, secondly, I would remind you and will tell you again that the statements of counsel are not evidence.

Id. at 170.

Appellant now asserts that the trial court erred when it denied his motion for a mistrial. Appellant's minimalist argument[2] essentially asserts that the prosecutor's question was so egregious that it deprived him of a fair trial, citing Commonwealth Yockey, 158 A.3d 1246 (Pa. Super. 2017), for support.

Our review of a trial court's denial of a motion for a mistrial "is limited to determining whether the trial court abused its

_____

[1] The Court clearly intended to say "made by the prosecutor" or "made to the Defendant." It is unclear whether the judge misspoke at the time or if this is the result of a transcription error.

[2] The entirety of Appellant's argument in support of this claim constitutes one-and-a-half pages of his brief, nearly one full page of which is a reproduction of the transcript.

discretion." Commonwealth v. Fortenbaugh, ... 69 A.3d 191, 193 ([Pa.] 2013) (internal quotation marks omitted). A trial court may grant a mistrial "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." Commonwealth v. Simpson, ... 754 A.2d 1264, 1272 ([Pa.] 2000). A mistrial "is not necessary where cautionary instructions are adequate to overcome prejudice." Commonwealth v. Chamberlain, ... 30 A.3d 381, 422 ([Pa.] 2011).

Commonwealth v. Cash, 137 A.3d 1262, 1273 (Pa. 2016). More specifically, "in reviewing an allegation of prosecutorial misconduct, we will find that comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and reach a fair verdict." Id. (cleaned up).

Instantly, the trial court sustained Appellant's objection and, thus, the only question before us is whether the prosecutor's statement undermined the fairness of Appellant's trial to the extent that the trial court's denying the motion for a mistrial constituted an abuse of discretion. The trial court determined that the fairness of Appellant's trial was not jeopardized, especially in light of the curative instruction it gave to the jury. We agree.

Although we acknowledge the potential for unfair prejudice stemming from the accusation that a son is calling his father a liar, the unique circumstances of this case blur the line between unfair and fair prejudice with regard to such an accusation. The simple fact is that the very nature of this case pitted the credibility of Appellant against that of Father, who was a key

witness for the Commonwealth. Their respective recollections of the events leading to the purchase of the ATV, as well as their incompatible memories of the meeting at Bob Evans, were inconsistent. While it is possible, as Appellant's counsel suggested in requesting a mistrial, that gaps in memory, rather than intentional deceit, explained their diverging testimonies, the implication that one or the other was lying was another reasonable inference that the jury could have reached. Thus, the prosecutor's expressing that possibility, albeit objectionable as argumentative, could not have significantly added to the prejudice already resulting from that reasonable inference that stemmed from a preexisting and obvious conflict in the evidence. Further, the trial court's curative instruction limited any resulting unfair prejudice.[3]

This Court's decision in Yockey does not support Appellant's claim. In that case, the victim testified that the defendant had molested him on several occasions. Yockey, 158 A.3d at 1248. A defense witness testified that, on one occasion when the victim claimed to have been molested, he observed them sleeping in separate rooms, contrary to the victim's testimony. Id. at 1251. On cross-examination, the defense witness failed to recall a detail remembered by a previous witness who was also present at the time. Id. The prosecutor then repeatedly asked him if the previous witness was lying. Id.

_____

[3] Notably, Appellant provides no argument regarding the effectiveness of the curative instruction.

Yockey argued on appeal that it was error for the Commonwealth to question one witness about the credibility of another. Id. at 1253-54. This Court acknowledged that it is generally improper for "lay witnesses ... to opine upon the credibility of" another witness. Id. at 1255. More specifically, the Yockey Court recognized that "'were they lying' questions are generally prohibited in Pennsylvania." Id. at 1256. Nevertheless, the Court determined that the "error was harmless beyond a reasonable doubt" given the particular circumstances of that case. Id.

Accordingly, we ascertain no abuse of its discretion in the trial court's denying Appellant's motion for a mistrial. In the circumstances of this case, the clash of credibility between Appellant and Father was unavoidable, and, whatever prejudice did stem from the impermissible question by the prosecutor was adequately mitigated by the curative instruction given to the jury. This claim lacks merit.

## III

Next, Appellant claims that the award of restitution to Synchrony Bank in the amount of $14,779, was illegal under Commonwealth v. Veon, 150 A.3d 435 (Pa. 2016), arguing that the bank is not an individual entitled to restitution. The trial court agreed that the restitution order is illegal, but declined to act because it lacked jurisdiction to alter the order after Appellant filed his notice of appeal. See TCO at 13. Because the trial court agreed that restitution to Synchrony Bank was awarded in error, and because it does not

appear that Synchrony Bank was a victim in this case, we conclude that the award of restitution was illegal, and remand for resentencing on that basis.

The restitution statute provides as follows:

(a) General rule.--Upon conviction for any crime wherein:

> (1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

> (2) the victim, if an individual, suffered personal injury directly resulting from the crime,

> the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa.C.S. § 1106(a) (emphasis added).

Although the restitution statutes in question have been amended since Veon was decided (and prior to Appellant's judgment of sentence) to include business entities as potential recipients of restitution,[4] it is nevertheless clear that Synchrony Bank was not a direct victim of Appellant's misconduct, if it was a victim at all. The direct victim of the fraud perpetrated by Appellant

---

[4] The Veon Court held that a government agency was not entitled to restitution under the prior version of Section 1106, because the statute did not then include language suggesting non-humans were entitled to restitution except in specific circumstances not at-issue in that case, and because a government agency was not a "direct victim" as defined by 18 P.S. § 11.103. Veon, 150 A.3d at 454. A "direct victim" is an "individual against whom a crime has been committed or attempted" and suffered harm as a result. 18 P.S. § 11.103 (emphasis added). However, Section 1106 clearly now contemplates circumstances where a "business entity" may be entitled to restitution. See 18 Pa.C.S. § 1106(c)(1)(ii)(G). However, Section 1106 dictates that when setting priorities for restitution payments, human individuals come before business entities. See 18 Pa.C.S. § 1106(c)(1)(ii)(A).

was Father. Father's identity was stolen, and his signature forged. As a result, Father was burdened with a debt to the bank. Whether Father's award of restitution will ultimately be used to satisfy his debt to Synchrony Bank is immaterial to the legality of the restitution order. In any event, there is no evidence of record indicating that Synchrony Bank forgave that debt in anticipation of receiving a restitution award following Appellant's conviction. In these circumstances, we defer to the trial court's conclusion that the restitution award was illegal and remand for resentencing.[5]

## IV

Finally, Appellant argues that he has uncovered after-discovered evidence that tends to exculpate him. The trial court determined that because Appellant raised this claim after he filed a notice of appeal, the court was unable to order an evidentiary hearing on the after-discovered evidence claim due to lack of jurisdiction, despite acknowledging that "an evidentiary hearing may be appropriate to determine whether the after[-]discovered would warrant a new trial." TCO at 12.

As there is no evidentiary record before this Court to substantiate Appellant's after-discovered evidence claim, we must decline to address it at this time, without prejudice to Appellant's ability to raise it again in either a post-sentence motion following the new judgment of sentence entered on

---

[5] We note that the trial court did not provide a detailed analysis of its conclusion that the restitution award was illegal. Nevertheless, it is plain from the record that Father is the direct victim of Appellant's crimes, not Synchrony Bank.

remand, or in a petition for relief under the Post Conviction Relief Act, 42 Pa.C.S. § 9541, et seq.

Judgment of sentence vacated.   Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/10/2020